IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.                                                  NO.  CR 04-0519 RB

**SHERIDAN W. WALKER,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** came before the Court on Defendant's (Walker's) Motion to Suppress Evidence (Doc. 24), filed on July 16, 2004.  On August 26, 2004, I held a suppression hearing and heard arguments.  Having considered the briefs, evidence, arguments of counsel, and being otherwise fully advised, I find that this motion should be denied.

      On Sunday, October 26, 2003, at approximately 12:30 p.m., the Roosevelt County Sheriff's Department received an anonymous 911 call.  The caller stated that there were two crazy men at 1868 New Mexico Highway 236, who were threatening to kill each other.  The caller said the men had access to firearms.  When the dispatcher asked what the men were doing, the caller replied that she did not know what they were doing because she had left because she could not stand it.  The caller refused to give her name, but the call was traced to a pay phone, not to the address.

      Roosevelt County Sheriff's Deputy Parker was dispatched to the address, which is a single-family residence.  Another deputy, Raul Rosa, recognizing the address and assuming that the report concerned a fight between Walker and his son, indicated to Deputy Parker, by radio, that the son was

with Deputy Rosa and could not be involved in the altercation. Parker testified that he had been told that Walker was a convicted felon. Deputy Brogelie, Deputy Rosa, and New Mexico State Police Officer Lance Bateman were dispatched to the location to back-up Deputy Parker.

When Deputy Parker arrived, he approached the door to the house. Parker opened the storm door and knocked on the door, which was slightly ajar. The knocks on the door caused it to open more. Parker announced his presence, but received no response. He knocked on the door again, and the door opened more. Parker heard a voice shout "I have a G-- damned gun."

After hearing the exclamation, Parker entered the residence and saw Defendant Sheridan Walker sitting on a couch in the living room. Parker ordered Walker to raise his hands, but Walker refused. After several commands, Walker arose from the couch and put his hands in his pockets. Parker again ordered Walker to put his hands up. Walker finally complied and he was handcufferd and escorted outside by other law enforcement personnel that had arrived on the scene.

Walker was alone in the living room. Because the 911 caller had stated that there were two armed men in the house threatening violence, the officers, for their safety as well as for the safety of the second man, performed a protective sweep of the residence. During the protective sweep, the officers observed numerous firearms in plain view in two of the bedrooms, but did not find a second man. Subsequent checks on the firearms revealed that some of them were stolen. Walker was charged with being a felon in possession of a firearm and felon in possession of ammunition in violation of 18 U.S.C.§§ 922(g)(1) and 924(a)(2).

Walker moved to suppress the firearms on the grounds that the warrantless entry and search of his home violated the Fourth Amendment. It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *United States*

*v. Rhiger*, 315 F.3d 1283, 1287 (10th Cir. 2003) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). "[A]bsent exigent circumstances, the firm line at the entrance to the house may not reasonably be crossed without a warrant." *Kirk v. Louisiana*, 536 U.S. 635, 636 (2002) (internal quotation marks and alterations omitted). When a government agent enters a home without a warrant, "the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

The Government argues that exigent circumstances existed because the officers feared for their own safety and the safety of the second man. The Supreme Court has recognized several types of exigent circumstances that may justify a warrantless entry into a home, including the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home. *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)).

In risk of personal danger cases, the requirements of the exigent circumstances exception are (1) the officers must have reasonable grounds to believe that there is an immediate need to protect the lives or safety of themselves or others; (2) the search must not be motivated by an intent to arrest or seize evidence; and (3) there must be some reasonable basis, approaching probable cause, to associate the emergency with the place to be searched. *Thomas*, 372 F.3d at 1177.

The Government has satisfied its burden of establishing exigent circumstances. The 911 caller reported that there were two crazy men in the house with access to firearms and that the men were going to kill each other. Deputy Parker heard Walker shout that he had a "G– damn gun." The officers faced a situation where there were firearms inside the home, it was unclear how many people

were inside the home, and the circumstances gave rise to a reasonable fear that the firearms might be used against the officers or others. The officers had reasonable grounds to believe there was an immediate need to ensure their safety and the safety of others by entering the house.

Walker relies on *Kerman v. New York*, 261 F.3d 229 (2d Cir. 2001), to support his stance that exigent circumstances were absent. In *Kerman*, the Second Circuit held that an uncorroborated and anonymous 911 call alone was insufficient to establish probable cause for a warrantless and forceful entry into a private dwelling. *Id.,* 261 F.3d at 236. Unlike the anonymous caller's information in *Kerman*, the information provided by the 911 caller in the instant case was corroborated in several respects. When Parker arrived at the residence, the front door was ajar. After Parker announced his presence, Walker shouted that he had a "G-- damn gun." Walker's statement corroborated the anonymous tipster's factual account. Thus, *Kerman* is inapposite.

Once inside the living room, Parker found Walker sitting on the couch. Walker had just shouted that he had a gun. Parker knew that Walker was a convicted felon. Walker disobeyed Parker's commands and put his hands in his pockets in a threatening manner. The caller indicated that the persons in the house were armed and dangerous.

After securing Walker, the officers performed a protective sweep of the residence. A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The protective sweep must be justified by a reasonable perception, based upon specific and articulable facts, that the area swept harbors an individual posing an immediate danger to the officers or others. *Id*. at 334. A protective sweep "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id*. at 327.

In this case, the protective sweep was justified. The officers had restrained and removed Walker and the anonymous caller had indicated that a second armed man was in the house. The officers had no way of knowing whether the second armed man had been shot. Under these circumstances, a reasonable officer had to ascertain whether anyone posing an immediate threat, or a wounded individual, or both, were in the house.

During the protective sweep, the officers saw numerous guns in two of the bedrooms. Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent, and (3) the officer had a lawful right of access to the object. *Thomas*, 372 F.3d at1177 (citing *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002)).

The officers were lawfully in the house, the firearms served as evidence of the crime of felon in possession of a firearm, and nothing impeded the officers' lawful right of access to the firearms. Because all of the elements of the plain view exception are satisfied, the officers properly seized the firearms. Accordingly, Walker's argument that the weapons were seized as a result of an illegal search is without merit.

Walker's mother, Wanda Walker, testified that the officers' account of the protective sweep was inaccurate because she found her bedroom closet door open, her mattress askew on the box spring, and her dresser drawers open. The state of the closet door and mattress is consistent with a protective sweep, which entails cursory visual inspection of those places where a person might be hiding. *Buie*, 494 U.S. at 327. The officers could have displaced the mattress when they looked for a person hiding under the bed. Ms. Walker also testified that her four-and-a-half-year-old great-grandchild may have left the dresser drawers open. I find that Ms. Walker's testimony was not

5

inconsistent with the testimony of the officers. To the extent there were any inconsistencies, I fully credit the testimony of the officers.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant's Motion to Suppress Evidence is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**